UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JGB ENTERPRISES, INC.,

                          Plaintiff,

          -against-                                    5:14-cv-1439 (LEK/ATB)

BETA FLUID SYSTEMS, INC., *et al*.,

                          Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.      INTRODUCTION

          Plaintiff JGB Enterprises, Inc. ("Plaintiff") commenced this action on November 26, 2014,

asserting a claim for fraud based on alleged misrepresentations by its subcontractor, Beta Fluid

Systems, Inc. ("Beta Fluid"), which led to the cancellation of Plaintiff's contract with the Marine

Corps (the "Corps").  Dkt. Nos. 1; 9 ("Amended Complaint").  Presently before the Court is a

Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Beta Fluid,

BFSNC, Inc. ("BFSNC"), and Beta Fueling Systems, Inc. ("Beta Fueling") (together, the "Beta

Defendants").  Dkt. Nos. 15 ("Beta Motion"); 15-2 ("Beta Memorandum").  Defendant McAleese,

Ltd. ("McAleese") (together with the Beta Defendants, "Defendants") filed its own Motion to

dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and further adopting the

arguments of the Beta Defendants.  Dkt. Nos. 21 ("McAleese Motion"); 21-2 ("McAleese

Memorandum").  Plaintiff has filed a Cross-Motion opposing the McAleese Motion and requesting

jurisdictional discovery.  Dkt. No. 26 ("Cross-Motion").  For the following reasons, the Court grants

McAleese's Motion to dismiss for lack of personal jurisdiction, and denies the Beta Defendants'

Motion to dismiss and Plaintiff's Cross-Motion for jurisdictional discovery.

## II.    BACKGROUND[1]

### A. Parties

Plaintiff is a corporation organized under New York law.  Am. Compl. ¶ 1.  Defendants,

Plaintiff alleges, are related entities.  Id. ¶¶ 9-10.  Beta Fluid is a corporation organized under the

laws of and with its principal place of business in North Carolina.  Id. ¶ 2.  On or about October 30,

2014, Beta Fluid amended its articles of incorporation to change its name to BFSNC.  Id. ¶ 3.  Beta

Fueling is a limited liability company organized under Delaware law and doing business in North

Carolina.  Id. ¶ 4.  McAleese is an Australian corporation, which does business in the United States,

including in New York.  Id. ¶ 5.  At the time of the events giving rise to this action, McAleese,

together with a subsidiary named Liquip International, "owned and controlled" Beta Fluid.  Id. ¶ 6.

In or about October 2014, McAleese transferred the assets of Beta Fluid to Beta Fueling.  Id. ¶ 7.

### B. Marine Corps Solicitation

This action arises from a solicitation issued by the Corps in February 2011, seeking

proposals for a contractor to provide "logistics support for the procurement, packaging and shipping

of specific systems and components" for water and fuel systems.  Am. Compl. ¶¶ 13-14.  The

selected bidder would be awarded a fixed-price contract for one base year and four option years,

with a $99 million ceiling.  Id. ¶ 15.  The contract would be awarded based on an evaluation of past

performance, technical capabilities, and price.  Id. ¶ 32.  Bidders were instructed to provide past

performance information on "at least 2 programs underway or completed during the past 3 years as a

---

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the Complaint are accepted as true and form the basis of this section.  See Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997) (noting that, in addressing a motion to dismiss pursuant to 12(b)(6), "[a] court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff").

prime or subcontractor, and 2 programs underway or completed during the past 3 years by your subcontractors similar in content and scope to that proposed." Id. ¶ 34. The solicitation was 100% small business set-aside, and any business listed by a bidder in the past performance part of their proposal was required to be a small business. Id. ¶ 28. All bidders were required to be registered with the Central Contractor Registration ("CCR") and On-line Representations and Certifications Application ("ORCA"), two government databases for contractors. Id. ¶¶ 19, 65. Plaintiff was at all times a qualified small business and was registered with the CCR and ORCA. Id. ¶¶ 38-39.

### C. Communications Between Plaintiff and Beta Fluid

When it became aware of the solicitation, Plaintiff contacted Beta Fluid as a potential sub-contractor in its bid. Am. Compl. ¶ 41. Between February 2011 and April 15, 2011, when Plaintiff submitted its proposal, Plaintiff had numerous communications with Beta Fluid. Id. Plaintiff alleges that at all times during these discussions, Beta Fluid was aware of the solicitation and its requirement that all sub-contractors be qualified small businesses. Id. ¶ 42. Plaintiff recounts numerous conversations and e-mails between Plaintiff's employee, Marty, and Beta Fluid's employee, Ray. See id. ¶¶ 43-61.

On or about February 10, 2011, Marty spoke to Ray regarding the solicitation and Beta Fluid's proposed role as a subcontractor. Id. ¶ 43. Marty asked about the pricing and availability of various Beta Fluid products. Id. On February 14, 2011, Ray emailed Marty a quoted price and terms for a part. Id. ¶ 44.

On March 5, 2011, Marty emailed Ray seeking pricing for various parts, and asked for information regarding Beta's Fluid's warranty policy and quality inspections. Id. ¶ 45. Marty informed Ray that this information would be used in the technical part of Plaintiff's proposal. Id.

Marty also asked Ray to identify any other product manufactured by Beta Fluid that was part of the solicitation, because Plaintiff "would like to use [Beta Fluid's] product as much as possible." Id. Marty and Ray continued to have exchanges regarding quotes for various parts. Id. ¶¶ 46-54.

On April 7, 2011, Marty emailed Ray seeking an update on past performance information that he had requested. Id. ¶ 55. He attached "the detail" for what each proposal was required to contain. Id. That same day, Ray responded that Beta Fluid had been awarded many contracts on one of the parts, and identified several contracts. Id. One of the contracts, which Plaintiff included in the past performance section of its proposal, was dated April 5, 2011. Id. ¶ 63. The other Beta Fluid contract Plaintiff included was dated March 22, 2011. Id. ¶ 64. Ray referred Marty to the National Stock Number ("NSN") website to "pull up older contracts." Id. ¶ 56. In both the April 5, 2011 and March 22, 2011 contracts, Beta Fluid represented itself as a small business and had been awarded the contracts as such. Id. ¶¶ 63-64. On April 8, 2011, Ray indicated his awareness that Beta Fluid's past performance information was being included in Plaintiff's bid. Id. ¶ 58.

Beta Fluid was also registered as a small business in the CCR and OCRA databases. Id. ¶ 65. Under the governing regulations, these registrations are required to be updated at least annually. Id. (citing 48 C.F.R. § 4.1201).

Plaintiff asserts that Beta Fluid, at all times, knew that its representations, including size status were being relied upon and used by Plaintiff in its bid. Id. ¶ 62.

**D.  Award and Cancellation of Contract**

On July 6, 2011, the Corps awarded Plaintiff the contract, and immediately issued Plaintiff two delivery orders. Am. Compl. ¶ 67. Plaintiff began to fill the orders, and had numerous communications with Beta Fluid regarding parts it would supply. Id. ¶¶ 68-69.

Plaintiff's performance, however, was halted when other bidders challenged the award on the ground that Beta Fluid was not a small business. Id. ¶ 77. Plaintiff again sought confirmation of Beta Fluid's size, and on August 30, 2011, Beta Fluid, through its CEO, represented to Plaintiff that it had between 250-300 employees, and was therefore a small business. Id. ¶ 78. Plaintiff later discovered that Beta Fluid had been acquired in 2006 by McAleese, a large business, which disqualified Beta Fluid as a small business. Id. ¶ 80.

Plaintiff alleges that because of Beta Fluid's misrepresentations, the Corps reduced its outstanding order to Plaintiff. Id. ¶ 83. Subsequently, the Court of Federal Claims ordered the cancellation of the contract. Id. ¶¶ 84, 86 (citing GTA Containers v. United States, 103 Fed. Cl. 471 (Fed. Cl. 2012)). As a result of that ruling, the Corps cancelled the contract and withdrew the existing orders. Id. ¶ 87.

**E. Plaintiff's Action**

Plaintiff commenced the present fraud action asserting that: (1) Beta Fluid misrepresented itself as a small business; (2) Beta Fluid knew that representation was false; (3) Beta Fluid intended Plaintiff to rely on the misrepresentation; (4) Plaintiff justifiably relied on the misrepresentation in submitting its proposal to the Corps; and (5) as a result of Plaintiff's reliance, its contract with the Corps was cancelled and Plaintiff suffered damages. Am. Compl. ¶¶ 104-111. Plaintiff states a loss of net profits of $3.5 million and $100,000.00 in legal fees. Id. ¶ 112. Plaintiff claims damages in the amount of $15 million. Id. ¶ 114. The Court has diversity jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1332(a). Id. ¶ 11.

Defendants filed the present Motions to dismiss, and Plaintiff filed a Cross-Motion for jurisdictional discovery. Beta Mot.; McAleese Mot.; Cross-Mot.

## III.    MCALEESE MOTION

McAleese, an Australian corporation, Am. Compl. ¶ 5, moves to dismiss Plaintiff's claim against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). McAleese Mem. at 2.  McAleese alternatively moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Id.

### A.  12(b)(2) Motion

#### 1. Standard of Review

Where a party moves to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  Where a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a *prima facie* showing of personal jurisdiction over a defendant.  Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005); Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986).

"A prima facie showing of jurisdiction 'does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'"  Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citation omitted).  Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998).  While a court should assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.

1990), it should "not draw 'argumentative inferences' in the plaintiff's favor," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

### 2. *Analysis*

In determining whether the Court may exercise personal jurisdiction, the Court must engage in a two-part inquiry. "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Metro. Life, 84 F.3d at 567; Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). New York law provides two bases for personal jurisdiction: (1) New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 301, which authorizes general jurisdiction, and (2) N.Y. C.P.L.R. § 302(a), which authorizes long-arm jurisdiction. Plaintiff has failed to allege specific facts establishing a *prima facie* case of personal jurisdiction over McAleese under either § 301 or § 302(a).

### a. Specific Jurisdiction

New York's long arm statute, N.Y. C.P.L.R. § 302(a), provides for jurisdiction over an out-of-state domiciliary, "who in person or through an agent:"

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
2. commits a tortious act within the state . . .; or
3. commits a tortious act without the state causing injury to person or property within the state, . . . if he
   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a).

The entirety of Plaintiff's allegations with respect to McAleese are that: (1) McAleese does business in the United States, including New York, Am. Compl. ¶ 5; (2) McAleese "owned and controlled" Beta Fluid at the time of the events giving rise to Plaintiff's cause of action, id. ¶ 6; (3) in or about October 2014, McAleese transferred the assets of Beta Fluid to Beta Fueling, id. ¶ 7.

These allegations are patently insufficient to establish personal jurisdiction over McAleese under § 302(a). Plaintiff has not alleged any role by McAleese in the alleged fraud, such as would give rise to jurisdiction under either § 302(a)(2) or § 302(a)(3). While Plaintiff alleges that McAleese does business in New York, Am. Compl. ¶ 5, Plaintiff does not allege that its cause of action arises from McAleese's transaction of business in New York. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999) (stating that under § 302(a)(1) transaction prong, the relevant cause of action must arise from the transaction).

### b. General Jurisdiction

A court may exercise general jurisdiction, under N.Y. C.P.L.R. § 301, over a foreign corporation, which "engages in a continuous and systematic course of doing business in New York." Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (citing Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 536 (N.Y. 1967)). To determine whether a corporation is deemed "present" in New York, courts look to the following factors: "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees . . . in the state." Id. (citing Frummer, 19 N.Y.2d at 537). Plaintiff does not plead any facts suggesting that McAleese engaged in systematic or continuous business New York. Plaintiff makes a conclusory allegation that McAleese does business in

8

New York, see Am. Compl. ¶ 5, but does not plead any specific facts establishing the extent of that business. See Jazini, 148 F.3d at 185.

Personal jurisdiction may also be established over a foreign corporation where a subsidiary of the corporation would be subject to jurisdiction in New York. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984). However, "the presence of the subsidiary alone does not establish the parent's presence in the state." Jazini, 148 F.3d at 184. A plaintiff must show that the subsidiary is either an "agent" or a "mere department" of the parent corporation in order to exercise personal jurisdiction over the parent. Jazini, 148 F.3d at 184. Plaintiff again makes only the conclusory allegation that McAleese "owned and controlled" the operations of Beta Fluid. Am. Compl. ¶ 6. This is insufficient to establish that Beta Fluid was either an "agent" or "mere department" of McAleese.[2]

**B. Jurisdictional Discovery**

Plaintiff has therefore failed to establish a *prima facie* case of personal jurisdiction over McAleese. However, Plaintiff cross-moves to conduct jurisdictional discovery in the expectation of finding facts that establish jurisdiction over McAleese. Cross-Mot.

A district court may order jurisdictional discovery even where a plaintiff has not made a *prima facie* showing of jurisdiction. Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft, 31 F.

---

[2] "To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'" Jazini, 148 F.3d at 184 (quoting Frummer, 19 N.Y.2d at 537). To determine whether a subsidiary is a "mere department," a court must consider four factors: (1) common ownership, (2) the financial dependency of the subsidiary on the parent, (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities," and (4) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." Id. at 184-85 (quoting Beech Aircraft, 751 F.2d at 120-22).

App'x 738, 739 (2d Cir. 2002). However, a plaintiff must at least have "made a sufficient start toward establishing personal jurisdiction." <u>Hollins v. U.S. Tennis Ass'n</u>, 469 F. Supp. 2d 67, 70-71 (E.D.N.Y. 2006) (quoting <u>Ubeler v. Boss Media</u>, 363 F. Supp. 2d 499, 506-07 (E.D.N.Y. 2005)). The Second Circuit has distinguished between "sparse" and "conclusory non-fact specific jurisdictional allegations" on the one hand, and "insufficiently developed" allegations on the other. <u>Texas Int'l</u>, 31 F. App'x at 739. The Second Circuit has also stated that dismissal for lack of personal jurisdiction was premature prior to discovery where the jurisdictional analysis involved "a multi-factor test that is very fact-specific." <u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 208 (2d Cir. 2003).

District courts in the Second Circuit however, have varied in their application of the "sufficient start" standard. Some district courts have been reluctant to grant jurisdictional discovery in the absence of a *prima facie* showing of personal jurisdiction. <u>Langenberg v. Sofair</u>, No. 03 CV 8339, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (citing cases); <u>see also</u> <u>Jazini</u>, 148 F.3d at 186 (finding that district court did not abuse discretion in denying jurisdictional discovery where the plaintiff did not make a *prima facie* case of personal jurisdiction). A district court need not permit discovery to allow a plaintiff "to engage in an unfounded fishing expedition for jurisdictional facts." <u>RSM Prod. Corp. v. Fridman</u>, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009) (quoting <u>Langenberg</u>, 2006 WL 2628348, at *6). Other district courts, following the sufficient start standard, have ordered jurisdictional discovery where the plaintiff "demonstrate[d] that facts supporting personal jurisdiction may exist that discovery should draw out." <u>PST Servs., Inc. v. Larson</u>, 221 F.R.D. 33, 37 (N.D.N.Y. 2004).

Applying the standard articulated by the Second Circuit in <u>Jazini</u>, <u>Texas International</u>, and

<u>Magnetic Audiotape</u>, the Court finds that Plaintiff has not made a sufficient start towards

establishing jurisdiction over McAleese warranting jurisdictional discovery. Plaintiff's allegations

with respect to McAleese—that it does business in New York, owned and controlled Beta Fluid, and

transferred Beta Fluid's assets to Beta Fueling, Am. Compl. ¶¶ 5-7—are exactly the type of

"conclusory non-fact specific jurisdictional allegations" rejected by the <u>Jazini</u> court, 148 F.3d at

185. Plaintiff's allegations regarding the relationship between McAleese and Beta Fluid are not

"simply insufficiently developed at this time." <u>Texas Int'l</u>, 31 F. App'x at 739.

Accordingly, McAleese's Motion to dismiss pursuant to Rule 12(b)(2) is granted, and

Plaintiff's Cross-Motion for jurisdictional discovery is denied.

## IV. BETA DEFENDANTS' MOTION[3]

The Beta Defendants—joined by McAleese—argue that the Amended Complaint

inadequately pleads several of the elements of a fraud claim. Specifically, Defendants argue that

Plaintiff has failed to plead the allegedly fraudulent statements with the requisite particularity. Beta

Mem. at 10. Defendants further argue that Plaintiff is unable to establish causation. <u>Id.</u> at 5. The

Beta Defendants additionally argue for the dismissal of Plaintiff's claim against Beta Fueling

because Plaintiff has not adequately alleged Beta Fueling's successor liability for Beta Fluid's

wrongdoing. <u>Id.</u> at 22.

### A. 12(b)(6) Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain

---

[3] Plaintiff argues in its Opposition that the Beta Defendants' Motion to dismiss is premature because at the time it was made McAleese had not yet been served. Dkt. No. 19 ("Opposition") at 1-2. However, McAleese has since been served, <u>see</u> Dkt. No. 20, and McAleese has filed its own Motion to dismiss, <u>see</u> McAleese Mot.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in the plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Allegations of fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). FED. R. CIV. P. 9(b). Specifically, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. To comply with the particularity requirement, a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). Furthermore, although intent may be alleged generally, a plaintiff must nonetheless "allege facts that give rise to a strong inference of fraudulent intent." Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995). "The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990).

## B. Plaintiff's Fraud Claim

Under New York law,[4] a fraud claim has the following five elements: "(1) a representation as to a material fact; (2) such representation was false; (3) defendant[] intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." Ross v. Louise Wise Servs., 868 N.E.2d 189, 195 (N.Y. 2007).

### 1. False Representation

A fraud claim requires the defendant to have made (1) a representation that is (2) false, (3) intended by the defendant to deceive the plaintiff, and (4) justifiably relied upon by the plaintiff. Plaintiff must therefore identify, with the particularity required by Rule 9(b), a representation by Beta Fluid as to its size status, intended to deceive Plaintiff. The Amended Complaint identifies three statements allegedly made by Beta Fluid in order to misrepresent its size and deceive Plaintiff: (1) the past performance information provided by Beta Fluid concerning prior contracts it had been awarded; (2) Beta Fluid's entries on the CCR and ORCA government databases; and (3) statements made by Beta Fluid's CEO concerning its size. Am. Compl. ¶¶ 63-65, 79.

### a. Past Performance Information

Plaintiff alleges that Beta Fluid's provision of past performance information was intended to deceive Plaintiff as to Beta Fluid's size. Am. Compl. ¶¶ 63-64. Plaintiff's allegations are as

---

[4] The parties' Memorandums of law apply New York law, see Beta Mem.; Dkt. No. 19 ("Opposition"). Although the Beta Defendants do not concede that New York law governs Plaintiff's claim, Beta Mem. at 2 n.4, they do not assert any conflict with the laws of another state, see id. Accordingly, the Court will apply New York law for the purposes of the present Motions. See Lehman v. Dow Jones & Co., Inc., 783 F.2d 285, 294 (2d Cir. 1986); Deep S. Pepsi-Cola Bottling Co., Inc. v. Pepsico, Inc., No. 88 CIV 6243, 1989 WL 48400, at *9 n.3 (S.D.N.Y. May 2, 1989).

follows: (1) Beta Fluid was at all times aware of the solicitation and its requirement that all sub-contractors be qualified small businesses, id. ¶ 42; Plaintiff requested past performance information from Beta Fluid to be used in its proposal, id. ¶ 55; Beta Fluid identified several contracts that it had been recently awarded, and referred Plaintiff to the NSN website for those and other older contracts, id. ¶ 56; Beta Fluid represented itself as a small business in those contracts, id. ¶¶ 63-64; Beta Fluid knew that Plaintiff was relying on its representations, id. ¶ 62. For the following reasons, the Court finds that Plaintiff's allegations regarding Beta Fluid's provision of past performance information are sufficient to support a claim for fraud.

The core of the Beta Defendants' argument is that *past* performance information is irrelevant to the issue of *current* size status. Beta Mem. at 16. "[Past performance information] is intended to demonstrate a track record of adequate performance on prior contracts, *not* to establish a company's current size for a new contract." Id. (citing 48 C.F.R. § 15.305(a)(2)). The Beta Defendants therefore argue that Plaintiff's assumption that the provision of a list of past contracts could be a false statement about Beta Fluid's current size is wholly misguided. Id. at 15. On this basis, the Beta Defendants claim to identify a number of gaps in Plaintiff's past performance theory, which they argue are fatal to Plaintiff's fraud claim. Id. at 11-12, 17. First, the Beta Defendants assert that the Amended Complaint lacks any but conclusory allegations that Beta Fluid was aware of the small business requirement. Id. at 12. Second, the Amended Complaint offers no reason why Beta Fluid would have anticipated that Plaintiff intended to determine Beta Fluid's current size from its past performance information. Id. Finally, even if Plaintiff had adequately pled fraudulent intent, Plaintiff could not justifiably rely on a statement about Beta Fluid's past contracts as a representation about Beta Fluid's size. Id. at 17.

14

The Court first addresses the Beta Defendants' assertion that current size status is irrelevant to past performance information. Id. at 16. The Beta Defendants assert that under federal contracting regulations, Plaintiff could not rely on a statement about Beta Fluid's past contracts as a representation of its current size. Id. (citing 48 C.F.R. §§ 15.305(a)(2); 19.301-1). The governing regulations, the Beta Defendants claim, establish that past performance information relates to "prior contracts," not to current size. Id.

However, the applicable regulations make clear that "past performance" is not limited to past contracts, but also includes current contracts. Federal Acquisition Regulation ("FAR") 15.305 states that past performance evaluation shall include "past or *current* contracts." 48 C.F.R. § 15.305(a)(2)(ii) (emphasis added). The solicitation similarly instructed bidders to provide past performance information on "at least two programs *underway* or completed." Am. Compl. ¶ 34 (emphasis added). Significantly, the contracts Beta Fluid referred Plaintiff to were awarded just before Plaintiff submitted its proposal on April 15, 2011, id. ¶ 41; one contract was dated April 5, 2011 and the other was dated March 22, 2011, id. ¶¶ 63-64. Construing Plaintiff's Amended Complaint in the most favorable light, see Allaire Corp., 433 F.3d at 249-50, the contracts provided to Plaintiff appear to have been current. Furthermore, in each of the contracts, Beta Fluid represented itself as a small business. Id. ¶¶ 63-64. Thus, Beta Fluid provided Plaintiff with apparently current contracts that it had been awarded as a small business. Under the circumstances, the Court cannot say, as a matter of law, that Plaintiff unjustifiably relied on those contracts as a representation about Beta Fluid's current size.

The Beta Defendants also argue that the Amended Complaint lacks allegations suggesting that Beta Fluid's provision of the past contracts was fraudulent. Beta Mem. at 13-14. The Beta

15

Defendants argue that the Amended Complaint "nowhere alleges that Plaintiff informed Beta Fluid that its size status—past or present—had any significance for the contract" and only "asserts by fiat that Beta Fluid was aware of that requirement." Id. at 14. While the Beta Defendants are correct that the Amended Complaint never alleges that Plaintiff directly informed Beta Fluid of the size requirement, the Amended Complaint does recount discussion on numerous occasions between Plaintiff and Beta Fluid regarding the solicitation and Beta Fluid's proposed subcontractor role on the contract. Id. ¶¶ 43, 47, 55. Plaintiff alleges that it discussed "the solicitation and the proposed role of [Beta Fluid] as a subcontractor in the project" with Beta Fluid. Id. ¶ 43. Drawing every inference in Plaintiff's favor, the Court finds this is sufficient to infer that Beta Fluid was aware of the size requirement. Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990) ("The general rule that pleadings are to be construed in the light most favorable to the pleader and accepted as true, . . . is not thereby abrogated" by Rule 9(b)'s heightened pleading standard.).

The Court next considers whether the Amended Complaint suggests that Beta Fluid provided the past performance information with fraudulent intent. Intent may be alleged generally, although a plaintiff must nonetheless "allege facts that give rise to a strong inference of fraudulent intent." Acito, 47 F.3d at 52. Plaintiff here alleges that Beta Fluid had been acquired by McAleese in 2006. Am. Compl. ¶ 80. However, as of 2011, Beta Fluid had not updated its registration as a small business in the CCR and ORCA government databases. Id. ¶ 65. Moreover, Beta Fluid continued to be awarded contracts as a small business. See id. ¶¶ 63-64. The specific allegations regarding Beta Fluid's inclusion in Plaintiff's proposal further give rise to "a strong inference of fraud." The Court has already found that Plaintiff sufficiently alleged that Beta Fluid was aware of the solicitation's size requirement. See id. ¶ 43. Then, knowing that Plaintiff was relying on its

representations, id. ¶ 58, Beta Fluid referred Plaintiff to two apparently current contracts in which it represented itself to be a small business, id. ¶¶ 63-64. The Court finds that all of these allegations are sufficient under Rules 9(b) and 8(a) to suggest that Beta Fluid's provision of contracts in which it represented itself as a small business was fraudulent. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) ("The requisite 'strong inference' of fraud may be established either by (a) . . . or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.").[5]

### 2. Causation

In order to make a common law fraud claim under New York law, a plaintiff must establish that the misrepresentation was the proximate cause of the injury suffered. Cyber Media Grp., Inc. v. Island Mortg. Network, Inc., 183 F. Supp. 2d 559, 581 (E.D.N.Y. 2002). "An injury is proximately caused if it is the natural and probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud." Cumberland Oil Corp. v. Thorpp, 791 F.2d 1037, 1044 (2d Cir. 1986).

Plaintiff alleges that Beta Fluid's misrepresentation proximately caused its injury because Beta Fluid's inclusion in the proposal resulted in the cancellation of its contract with the Corps and the withdrawal of delivery orders. Am. Compl. ¶ 110.

The parties argue at length about whether the Court can consider the Court of Federal Claims opinion on the Beta Defendants' Motions to dismiss, or whether the Court is limited to the

---

[5] Having found Plaintiff's allegations regarding Beta Fluid's provision of past performance information sufficient to support a fraud claim, the Court need not address whether the allegations concerning Beta Fluid's CCR and ORCA registrations, or the allegations regarding representations by Beta Fluid's CEO, would also be sufficient to support Plaintiff's claim.

allegations in the Amended Complaint. <u>See</u> Beta Mem. at 5-10; Opp'n at 4-12. A district court can permissibly consider documents other than the complaint in ruling on a Rule 12(b)(6) motion where: (1) the document is either attached to or incorporated by reference in the complaint; (2) the document is "integral" to the complaint; or (3) the document is properly the subject of judicial notice under Federal Rule of Evidence 201(b)(2). <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007). A court may only consider such documents "'to determine what the documents stated,' and 'not to prove the truth of their contents.'" <u>Id.</u> (quoting <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991)) (emphasis omitted).

The Beta Defendants claim that the Court may appropriately consider the Court of Federal Claims opinion, <u>GTA Containers</u>, 103 Fed. Cl. 471 (Fed. Cl. 2012), under all three exceptions to the rule that a district court must limit itself to the facts as stated in the complaint on a Rule 12(b)(6) motion. Beta Mem. at 6 n.6. The Beta Defendants argue that the opinion is incorporated by reference, integral to Plaintiff's causation theory, and a public record properly the subject of judicial notice. <u>Id.</u> The significance of <u>GTA Containers</u>, the Beta Defendants contend, is that it contradicts Plaintiff's theory of causation, and shows that the Court of Federal Claims in fact cancelled Plaintiff's contract with the Corps because of an independent misrepresentation made by Plaintiff, and not because of Beta Fluid's misrepresentation. <u>Id.</u> at 6. Plaintiff disputes whether the Court can properly consider <u>GTA Containers</u>. Opp'n at 5-9.

At this point, the Court need not determine whether it can consider <u>GTA Containers</u> because Plaintiff's allegations are sufficient to establish causation independent of that opinion. Specifically, Plaintiff alleges that "[b]ecause of the misrepresentations made by [Beta Fluid] . . . , the Corps reduced the outstanding order to [Plaintiff]." Am. Compl. ¶ 83. The cancellation of the contract

was only ordered "[s]ubsequently." Id. ¶ 84. Thus, Plaintiff alleges that prior to the Court of

Federal Claims opinion, the Corps had already reduced its orders on account of Beta Fluid's

misrepresentation. On a motion to dismiss, this is sufficient to plead proximate causation,

regardless of the reasons behind the Court of Federal Claims' order.

### C. Successor Liability

Plaintiff alleges that BFSNC and Beta Fueling are successors in interest to Beta Fluid. Am.

Compl. ¶ 8. The Beta Defendants argue that Plaintiff has not adequately pled the successor liability

of Beta Fueling. Beta Mem. at 22.

"It is a general rule that a corporation which acquires the assets of another is not liable for

the torts of its predecessor." Schumacher v. Richards Shear Co., Inc., 451 N.E.2d 239, 244 (N.Y.

1983). However, "[a] corporation may be held liable for the torts of its predecessor if (1) it

expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or

merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling

corporation, or (4) the transaction is entered into fraudulently to escape such obligations." Id.

Plaintiff argues that its allegations establish that Beta Fueling is either a mere continuation of Beta

Fluid or that the transfer of assets from Beta Fluid to Beta Fueling was a fraudulent conveyance.

Opp'n at 21.

A corporation is a mere continuation of another where there is "a common identity of

directors, stockholders and the existence of a only one corporation at the completion of the transfer."

Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F. Supp. 834, 839 (S.D.N.Y. 1977). "[I]t is not

simply the business of the original corporation which continues, but the corporate entity itself." Id.

"The mere continuation exception is 'designed to prevent a situation whereby the specific purpose

of acquiring assets is to place those assets out of the reach of the predecessor's creditors . . . Thus, the underlying theory of the exception is that[] is [a] corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.'" Societe Anonyme Dauphitex v. Schoenfelder Corp., No. 07 Civ. 489, 2007 WL 3253592, at *6 (S.D.N.Y. Nov. 2, 2007) (quoting 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7124.10 (1999)).

In the present case, Plaintiff alleges that McAleese, in or about October 2014, transferred the assets of Beta Fluid to Beta Fueling. Am. Compl. ¶ 7. Contradictorily, Plaintiff also alleges that on October 31, 2014, McAleese transferred Beta Fluid to Alfons Haar Maschinenbau GmbH & Co. KG ("Alfons"), a German corporation. Id. ¶ 94. Alfons then "placed [Beta Fluid] into [Beta Fueling]." Id.[6] Plaintiff alleges that Beta Fluid and Beta Fueling are "one and the same entity," id. ¶ 96, and have "the same leadership team, the same personnel, substantially the same assets, the same marketing plan and strategies, the same customers and the same business addresses," id. ¶ 99. Plaintiff alleges that Beta Fluid and Beta Fueling have the same place of business in North Carolina. Id. ¶¶ 3-4. Finally, Plaintiff alleges that the reason for the transfer of Beta Fluid's assets to Beta Fueling in October 2014 was a demand made by Plaintiff on June 10, 2014 to be compensated for Beta Fluid's misrepresentations. Id. ¶ 91. Plaintiff has therefore alleged continuity of ownership between Beta Fluid and Beta Fueling. See Silverman Partners LP v. Verox Grp., No. 08 CIV 3103, 2010 WL 2899438, at *4-5 (S.D.N.Y. July 19, 2010) (finding allegations of continuity of business, location, management, customers, and transfer of assets sufficient to state successor liability under

---

[6] Plaintiff alleges that Beta Fueling is now owned by Dome GmbH & Co. KG, also a German corporation. Am. Compl. ¶ 95.

mere continuation exception);  Societe, No. 07 Civ. 489, 2007 WL 325392, at *5 (S.D.N.Y. Nov. 2,

2007) (same).

　　　The Beta Defendants argue that Plaintiff has not adequately pled a mere continuation theory

because the Amended Complaint shows that Beta Fluid and Beta Fueling have separate, unrelated

owners, and that Beta Fluid continues to exist as a legal entity.  Beta Mem. at 24.  However,

carefully read, the Amended Complaint states that the assets of Beta Fluid were transferred to Beta

Fueling when the two corporations were owned by the same parent corporation.  Am. Compl. ¶¶ 7,

96.[7]  The Amended Complaint states that Beta Fluid and Beta Fueling are one and the same entity,

"although successively owned by different parents."  Id. ¶ 96.  Thus, the Amended Complaint does

not support the Beta Defendants' contention that the asset transfer occurred when Beta Fluid and

Beta Fueling were held by separate and unrelated parent corporations.  Second, districts courts have

not required, as the Beta Defendants assert, that the predecessor corporation be extinguished in

order for the mere continuation exception to apply.  See Societe, 2007 WL 3253592, at *6 (stating

that mere continuation exception may be satisfied "even when predecessor continues to exist as a

shell corporation"); cf. Fitzgerald v. Fahnestock & Co., Inc., 730 N.Y.S.2d 70, 72 (App. Div. 2001)

("So long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal

dissolution is not necessary before a finding of a de facto merger will be made.").  While Plaintiff's

allegations suggest that Beta Fluid (now known as BFSNC) still exists as a separate entity, see Am.

Compl. ¶¶ 2-3, Plaintiff alleges that Beta Fluid and Beta Fueling are "one and the same entity," id. ¶

96, and that the assets of Beta Fluid were transferred to Beta Fueling, id. ¶ 7.  The Court therefore

---

　　　[7] The Court notes that it is ambiguous whether McAleese or Alfons owned Beta Fluid and
Beta Fueling when the transfer occurred.  See Am. Compl. ¶¶ 7, 96.

21

finds that the suggestion in the Amended Complaint that Beta Fluid-BFSNC still exists as a separate corporation is not fatal to Plaintiff's ability to invoke the mere continuation exception.

The Court finds that Plaintiff's allegations are sufficient to state the successor liability of Beta Fueling under the mere continuation exception.[8]

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants BFSNC, Inc., Beta Fueling Systems, Inc., and Beta Fluid Systems, Inc.'s Motion (Dkt. No. 15) to dismiss is **DENIED**; and it is further

**ORDERED**, that Defendant McAleese's Motion (Dkt. No. 21) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Plaintiff JGB Enterprises, Inc.'s Cross-Motion (Dkt. No. 26) for jurisdictional discovery is **DENIED**; and it is further

**ORDERED,** The Beta Defendants filed a motion to dismiss on February 2, 2015.  See Dkt. No. 5.  Because Plaintiff subsequently filed an Amended Complaint, and an amended complaint supersedes the original complaint in all respects, see L.R. 7.1(a)(4), that motion is deemed moot; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

---

[8] The Court need not address whether Plaintiff's allegations also establish successor liability under the fraudulent conveyance exception.

**IT IS SO ORDERED.**

DATED:      September 29, 2015
               Albany, NY

                                          Lawrence E. Kahn
                                          U.S. District Judge